UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | | |
|---|---|---|
| **DARREL RAY BOUDREAUX** | * | **CIVIL ACTION NO. 11-0450** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Darrel Ray Boudreaux, born September 1, 1956, filed an application for disability insurance benefits on August 17, 2006, alleging disability as of March 1, 2006, due to back problems.[1] The Administrative Law Judge ("ALJ") rendered an unfavorable decision, which was remanded by the Appeals Council to consider the treating source opinions of Dr. Michael Burnell and Dr. George Williams. (Tr. 85-91; 94-97).

On remand, the ALJ held a hearing on August 3, 2009, and issued an unfavorable decision on October 19, 2009. (Tr. 12-19). After the Appeals

---

[1]Claimant remained insured through December 31, 2007. (Tr. 12). Thus, claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

Council denied review, claimant filed an action for judicial review with this Court.

FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is not substantial evidence in the record to support the Commissioner's decision of non-disability.

In fulfillment of Fed. R. Civ. P. 52, I find that the Commissioner's findings and conclusions regarding claimant's disability is not supported by substantial evidence, based on the following:

**(1) Records from Dr. Michael Burnell dated February 17, 2003 to February 8, 2007**.  On April 12, 2006, claimant complained of an intermittent dull backache for one year, and a left ankle sprain three weeks prior.  (Tr. 241).  An MRI of the lumbar spine dated May 29, 2006, showed a mild broad-based disc bulge at L4-5 mildly indenting the ventral thecal sac without significant central spinal canal or neural foraminal stenosis; facet osteoarthropathy bilaterally at L4-5 and L5-S1, and question of bilateral pars defects at L5 without spondylolisthesis.  (Tr. 228).  The impression was degenerative disc disease, for which he was prescribed Voltaren and Ultram.  (Tr. 232).

On February 5, 2007, claimant complained of neck pain and numbness in

his arms and fingers. (Tr. 257). The assessment was paresthesias. He was prescribed Ultram, Voltaren, a Medrol dosepak, and physical therapy. (Tr. 257-67).

An MRI dated February 8, 2007, showed degenerative changes at C5-6 and C6-7 worse at C6-7 with at least moderate right-sided and mild/moderate left-sided neural foraminal narrowing at C6-7. (Tr. 267).

**(2) Physical Residual Functional Capacity Assessment dated September 8, 2006**.[2] Tiffany Hose found that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk or sit about six hours in an eight-hour workday, and had unlimited push/pull ability. (Tr. 245). He could occasionally climb ramps/stairs, crouch, and crawl, frequently balance, stoop, and kneel, and never climb ladders/ropes/scaffolds. (Tr. 246).

**(3) Records from Dr. Burnell dated February 5, 2007 to November 28, 2007**.[3] In a Medical Source Statement dated April 3, 2007, Dr. Burnell found that claimant could lift less than 10 pounds frequently, 10 pounds occasionally, and 20 pounds rarely, but never 50 pounds. (Tr. 254). He determined that claimant could

---

[2] The ALJ gave no weight to this opinion because it was not given by an acceptable medical source. (Tr. 16).

[3] The record also contains reports dated June 24, 2008 to July 14, 2009, which are after claimant's date last insured for disability insurance purposes and were not considered by the ALJ. (Tr. 16, 296-304).

stand for 15 minutes at a time, walk four to five city blocks, stand/walk about two hours in an eight-hour workday, sit for 15 minutes at a time, and sit for a total of two hours in an eight-hour working day. (Tr. 254). He determined that claimant was limited as to reaching, handling, feeling, and fingering due to frequent weakness episodes in his left hand. (Tr. 255).

Dr. Burnell stated that claimant would need to take unscheduled breaks during the workday due to his chronic lumbar condition which caused pain, fatigue, and numbness to his fingers. He found that claimant would need to miss work or leave work early at least once a week. He determined that claimant would have medication side effects of drowsiness/sedation and problems with focus/concentration.

On November 28, 2007, claimant complained that he was no better after PT. (Tr. 293). Dr. Burnell recommended epidurals before surgery.

**(4) Records from Dr. George Williams dated February 8, 2007 to April 19, 2007** Claimant was referred to Dr. Williams, an orthopedic surgeon, by Dr. Burnell. (Tr. 279). On February 21, 2007, he complained of neck and shoulder pain and numbness in his hands. (Tr. 271, 274). He also complained of tiredness, difficulty sleeping, and headaches. (Tr. 271).

On examination, claimant had lower cervical pain and pain in between the

shoulders.  (Tr. 273).  The MRI revealed a herniated nucleus pulposus at C5-6.  The impression was cervical HNP and cervical spondylosis.

On April 19, 2007, claimant reported that physical therapy did not offer him much relief, and NSAIDS offered mild relief.  (Tr. 270).  He stated that "[c]urrently, he does not want surgery. He wants to continue with activity modifications."[4]

**(5) Claimant's Administrative Hearing Testimony**.  At the hearing on August 9, 2009, claimant was 52 years old.  (Tr. 24).  He testified that he was 5 feet 9 inches tall, and weighed about 180 pounds.  He lived with his wife and 15-year-old daughter.  (Tr. 25).

Claimant had completed high school.  He had attended boilermaker apprentice school for his on-the-job training.  (Tr. 26).  He had past work experience in welding and fabricating.  He testified that he still had a repair shop, but had gotten rid of almost all of his welding equipment.  (Tr. 27).  He had also worked as a project manager for two years, and as a farm manager.  (Tr. 27, 29).

Regarding complaints, claimant testified he had stopped working due to degenerative disc disease causing pain.  (Tr. 30).  He reported that he had tried to

---

[4] The record also contains a report from Dr. Williams dated 1/17/08, which is after claimant's date last insured.  (Tr. 289-90).

return to work as a combine operator, but only lasted three days. (Tr. 31). He complained that he had pain in his neck, shoulders and arms. He said that he had just started taking Lortab for days when he had pain. (Tr. 37).

As to activities, claimant reported that drove a pickup truck four days a week, but could not drive more than 25 minutes before his hands became numb. (Tr. 25, 31, 35). He stated that he had four horses, eight rabbits, and 30 chickens, and fed the rabbits and chickens daily. (Tr. 32-33). He testified that he incubated some of the eggs and raised the chickens. (Tr. 34).

Additionally, claimant said that he did yard work occasionally. (Tr. 32). He stated that he had recently gone fishing with his wife for about five hours, but had to alternate between sitting and standing up. (Tr. 36). He reported that he cleaned the fish after he caught them. He also testified that he helped his wife with chores when he felt well enough, and did a little repair work around the house. (Tr. 37). He said that he had quit hunting three years prior because of pain. (Tr. 38).

Regarding restrictions, claimant testified that he could lift a gallon of milk, but felt pulling in his neck. (Tr. 32). He stated that he could stand for two hours at a time on good days, but then had to sit down. (Tr. 42). He reported that he could push a buggy at the store for a couple of hours, but could not walk and browse for more than 45 minutes to an hour. (Tr. 44).

**(6) Administrative Hearing Testimony of Wendy Klamm, Vocational Expert ("VE")**. Ms. Klamm described claimant's past work as a farm manager as medium and skilled; a welder/fitter as medium and skilled, and a cable supervisor as light and skilled with an SVP of 6. (Tr. 46). The ALJ posed a hypothetical in which he asked the VE to assume a claimant who could lift and carry 20 pounds occasionally and 10 pounds frequently; stand, walk and sit for about six hours, but could not do over-shoulder work. In response, Ms. Klamm testified that he could perform his former job as a cable supervisor. (Tr. 47). However, when the ALJ changed the hypothetical to limit claimant to standing/walking for up to an hour then having to sit for a few minutes, the VE responded that such limitation would prevent him from doing that job.

The VE posed another hypothetical in which he asked Ms. Klamm to assume that claimant could lift and carry, but his standing/walking would be three-quarters of an hour to an hour continuously, then he would have to sit for a few minutes. (Tr. 47). In response, the VE testified that he would be restricted to sedentary work. However, she stated that he might be able to work as a light gate guard, of which there were 12,060 jobs statewide and 734,385 nationally. (Tr. 48).

The ALJ further modified the hypothetical to limit claimant to sedentary work, that is, standing and walking up to two hours, sitting up to six hours, and lifting/carrying up to 10 pounds occasionally and five pounds frequently, with no over-shoulder work. (Tr. 48). In response, the VE identified the jobs of sedentary cashier, of which there were 15,735 jobs statewide and 848,625 nationally, and sorter, of which there were 2,465 jobs statewide and 148,665 nationally. (Tr. 48-49). When the ALJ modified the hypothetical to include pain and limitations which would only allow claimant to stand a total of two hours for 15 minutes at a time, and sit for two to 15 minutes at a time, Ms. Klamm testified that he could not do any jobs. (Tr. 50).

**(7) The ALJ's Findings**. Claimant argues that: (1) the ALJ failed to properly evaluate and weigh two treating source medical opinions as required by 20 C.F.R. § 404.1527(d)(2),[5] SSR 96-2p, and SSR 96-5p, and (2) as a result, the ALJ's RFC finding is not supported by substantial evidence and his hypothetical questions to the VE failed to incorporate all of the claimant's functional

---

[5]20 C.F.R. § 404.1527(d)(2) provides as follows: Other opinions on issues reserved to the Commissioner. We use medical sources, including your treating source, to provide evidence, including opinions, on the nature and severity of your impairment(s). Although we consider opinions from medical sources on issues such as whether your impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1 to this subpart, your residual functional capacity (see §§ 404.1545 and 404.1546), or the application of vocational factors, the final responsibility for deciding these issues is reserved to the Commissioner.

limitations.  Because I find that the ALJ failed to properly evaluate the opinions of claimant's treating physicians and his RFC, I recommend that this matter be **REVERSED** and that claimant be awarded benefits.

The Appeals Council remanded this case to the ALJ to fully evaluate the treating source opinions of Dr. Burnell and Dr. Williams.  (Tr. 95).  On remand, the Appeals Council ordered the ALJ to "[g]ive further consideration to the treating source opinion pursuant to the provisions of 20 CFR 404.1527 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence." (Tr. 95-96).  The Appeals Council also suggested that the ALJ, as appropriate, request the treating sources "to provide additional evidence and/or further clarification of the opinions (20 CFR 404.1512)."[6]  (Tr. 96).

It is well established that the opinion of a treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994), *cert. denied*, 514 U.S. 1120, 115 S.Ct.

---

[6] If the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e). *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

1984, 131 L.Ed.2d 871 (1995). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Newton,* 209 F.3d at 455 (*citing* 20 C.F.R. § 404.1527(d)(2)). Good cause for abandoning the treating physician rule includes disregarding statements by the treating physician that are brief and conclusory, not supported by medically accepted clinical laboratory diagnostic techniques, or otherwise unsupported by evidence. *Leggett*, 67 F.3d at 566; *Greenspan*, 38 F.3d at 237.

 Here, the ALJ stated that the records from claimant's treating physicians, Drs. Williams and Burnell, were given "some weight" in these proceedings; however, these records were basically for "routine visits and prescription refills." (Tr. 17). That does not comply with the Fifth Circuit's standard for the rejecting the opinions of treating physicians. In *Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001), the court held that an ALJ must consider the following factors before declining to give any weight to the opinions of a treating doctor: length of treatment, frequency of examination, nature and extent of relationship, support provided by other evidence, consistency of opinion with record, and specialization. *Id*. at 621 (*citing Newton,* 209 F.3d at 456). The ALJ did not

consider those factors in this case. Thus, the undersigned finds that this constitutes error.

Additionally, the Appeals Council ordered the ALJ to obtain additional evidence concerning the claimant's impairments including "updated treating source records and, if available, a consultative *orthopedic* examination and medical source statements about what the claimant can still do despite the impairments." (Tr. 96). Under some circumstances, a consultative examination is required to develop a full and fair record. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). The decision to require such an examination is discretionary. *Id*. In *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977), the Fifth Circuit stated "[t]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision."

In this case, the Appeals Council stated that on remand, the ALJ "will" obtain additional evidence concerning claimant's impairments, which "should" include updated treating source records and, if available, "a consultative *orthopedic* examination and medical source statements." While claimant's family physician, Dr. Burnell, provided a medical source statement, an orthopedist did

11

not.  This is not in compliance with the order of the Appeals Council, and constitutes error.

Finally, claimant argues that as a result of the ALJ's failure to properly consider and weigh the treating source opinions, his RFC assessment is not supported by substantial evidence and his hypothetical questions to the VE did not include all of claimant's functional limitations.

The ALJ found that, based on claimant's limitations, claimant could perform work as a gate guard, check cashier, and sorter.  (Tr. 18).   These jobs were identified by the vocational expert based on the ALJ's hypothetical limiting claimant to "sedentary work, that is, standing and walking up to two hours, sitting up to six hours and lifting/carrying up to 10 pounds occasionally, 5 pounds frequently, with the caveat no over-shoulder work."  (Tr. 48).  However, when the ALJ modified the hypothetical to add "pain and limitations which would only allow him to stand a total of two hours, 15 minutes at a time and he could only sit for two to 15 minutes at a time," Ms. Klamm testified that he could not do these jobs or any other jobs.  (Tr. 50).

In the Medical Source Statement, Dr. Burnell found that claimant could lift less than 10 pounds frequently, 10 pounds occasionally, and 20 pounds rarely, but never 50 pounds.  (Tr. 254).  He determined that claimant could stand for 15

minutes at a time, walk four to five city blocks, stand/walk about two hours in an eight-hour workday, sit for 15 minutes at a time, *and sit for a total of two hours in an eight-hour working day*. (emphasis added). (Tr. 254). He further found that claimant would need to take unscheduled breaks during the workday due to his chronic lumbar condition which caused pain, fatigue, and numbness to his fingers; that claimant would need to miss work or leave work early at least once a week, and that claimant would have medication side effects of drowsiness/sedation and problems with focus/concentration. (Tr. 255). In response to the ALJ's hypothetical including the limitation that claimant would miss work about a day a week because of pain and limitations, Ms. Klamm testified that claimant could not maintain employment. (Tr. 50).

A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time. *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002) *(citing Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986)). According to claimant's treating physician and the vocational expert, claimant would be unable to maintain gainful

employment with his limitations.  Thus, the ALJ erred in his determination that claimant retains the capacity to work full-time.

Additionally, Dr. Burnell found that claimant would have side effects from his medications, including drowsiness/sedation and problems with focus/concentration. (Tr. 255).  Under the regulations, the Commissioner is required to consider the "type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate [] pain or other symptoms." *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999) (citing 20 C.F.R. § 404.1529(c)(3)(iv)).  The ALJ did not take the side effects of claimant's medications into consideration, and his failure to do so was error.

Accordingly, the undersigned recommends that the Commissioner's decision be **REVERSED**, and that the claimant be awarded appropriate benefits.  The undersigned recommends that March 1, 2006, which is the onset date asserted in his application, be used as the date for the commencement of benefits.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to

furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed June 21, 2012, Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE